United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

E.B.,

Plaintiff,

v.

SSA COMMISSIONER,

Defendant.

Case No. 25-cv-05793-LJC

**ORDER RESOLVING SOCIAL SECURITY DISABILITY ACTION**

## I. INTRODUCTION

Plaintiff E.B.[1] brings this action challenging the decision of Defendant the Commissioner of Social Security (the Commissioner) denying E.B.'s application for disability benefits. The parties have consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c) and filed briefs on the merits in accordance with the Federal Rules of Civil Procedure's Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g).

For the reasons discussed below, the Court finds in favor of E.B., who seeks only remand for further administrative proceedings, not a judicial award of benefits. The Commissioner's decision is REVERSED, and the matter is REMANDED for further administrative proceedings consistent with the Order.[2]

[1] Because opinions by the Court are more widely available than other filings, and this Order contains potentially sensitive medical information, this Order refers to the plaintiff only by his initials. This Order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] The parties have consented to the jurisdiction of a magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II. BACKGROUND

E.B. has impairments that include anxiety, depression, attention deficit hyperactivity disorder (ADHD), autism, and opioid use disorder in remission. He is twenty-seven years old, and the record reflects that he has spent much of his adult life in supportive housing and receiving significant assistance from his mother. He applied for disability benefits and supplemental security income on January 13, 2022, alleging disability beginning October 18, 2021. Admin. Record (AR, ECF No. 8) at 35, 597. That onset date coincides with the start of a week-long psychiatric hospitalization, which followed panic attacks and suicidal thoughts and social media posts after the end of a four-month romantic relationship. AR at 1042. E.B. later amended his alleged onset date to August 1, 2021. AR at 35, 803.

This background section focuses on E.B.'s own statements and testimony, as well as work he performed at In-N-Out Burger in 2022 and 2023 (during his alleged period of disability), because those topics are most relevant to the Court's analysis and conclusion that remand for further proceedings is necessary. The record also includes extensive medical and non-medical evidence. The Court has considered that evidence as well, but it does not alter or meaningfully inform the Court's conclusion that the ALJ erred as a matter of law in analyzing of E.B.'s testimony and past work. This Order is not intended as a complete statement of the administrative record, and its focus on E.B.'s testimony and work experience should not be understood as suggesting that those issues will be dispositive on remand.

For simplicity, the sections below summarizes portions of E.B.'s testimony and function report as if true. These summaries should not be construed as conclusively resolving the truth of any such testimony.

### A. E.B.'s Function Report

In a March 2022 function report, E.B.[3] stated that he had difficulty concentrating for more

[3] The box for the "Name of person completing this form" indicates that the function report was completed by "[E.B.'s mother] for [E.B.]." AR at 689. The ALJ accepted it as E.B.'s function report, without suggesting that his mother's assistance completing the form was a reason to treat it as anything other than E.B.'s own statements. *See* AR at 41 (e.g., "In a Function Report, the claimant alleges difficulty concentrating . . . . He reported having a behavior coach that helps him make sure he takes care of his hygiene."). Neither party has questioned that approach, so the

than fifteen minutes, and that he experiences cognitive exhaustion, fatigue, and panic attacks. AR at 682, 687. He had difficulty coping and was easily taken advantage of. AR at 682. He did not understand facial expressions, body language, or social interactions, and he had impulse control problems. AR at 682, 686. E.B. had difficulty learning new tasks and reported that he was easily overwhelmed. AR at 687. His conversation was "usually inappropriate or difficult." *Id.* He also reported an auditory processing disorder, that he had "extreme difficulty following instructions," and that he did not interact well with "most authority figures," who confused and overwhelmed him. *Id.*

E.B. was living in a group home, and a behavioral coordinator assisted with his daily activities. AR at 682–84. The behavioral coordinator worked with him for eight hours per day, five or six days per week. AR at 686. On Saturdays, E.B. participated in group outings, traveling by shuttle bus. *Id.*

E.B. reported difficulty grooming and shaving, but was generally able to complete other personal care and chores with assistance and reminders from his behavioral coordinator, who worked with him for eight hours per day. AR at 683–84. Even with that assistance, basic tasks like laundry took him a long time due to his inability to focus. AR at 684.

E.B. went shopping a few times a week with his behavioral coordinator to buy food for simple meals. AR at 685. His mother handled money for him because he was unable to budget for himself. *Id.* He enjoyed watching television and playing easy video games, as well as playing paintball. AR at 686.

**B. Administrative Hearing**

Administrative Law Judge Lisa Lunsford (the ALJ) held a hearing on December 6, 2023. E.B. testified that before his alleged onset of disability, he performed clerical work like photocopying, data entry, and organizing digital files for his family's insurance agency. AR at 359–60, 366. He testified that he struggled with dates and the chronological order of the months of the year, and he required significant help from his mother. AR at 359, 366. E.B. typically

Court follows it here.

United States District Court
Northern District of California

worked about two hours a day in that role. AR at 365.

After his alleged onset date, E.B. worked part-time at In-N-Out for around six months in 2022 and 2023. E.B. testified that he could not recall the exact timing of that work but "it was just six months of working." AR at 354. A job coach drove him to and from work for at least part of that time. AR at 356.

E.B. testified that he struggled to keep up with his work as a cashier, and that he only ever performed that job "shadowing" other associates rather than working independently. AR at 354–55. He also cleaned and bused tables. AR at 363. He "would repeatedly get backed up or stuck on an order, and they would have to correct that," or he would make mathematical mistakes and short-change customers. AR at 355. His supervisor spoke to him multiple times about subpar performance, specifically with respect to his pace. AR at 355–56. He was overwhelmed by time-sensitive assignments and "shut down" in response, and he experienced anxiety from social interactions and tasks like cleaning the women's bathroom. AR at 364. His auditory processing disorder made it hard for him to understand and follow instructions, such that he sometimes did the opposite of what he was asked to do. AR at 364–65. E.B. testified that other associates belittled and talked down to him and did not see him as an equal. AR at 356.

E.B. left his part-time job at In-N-Out because he was unable to keep up with chores and other requirements for his housing. AR at 355. He lived at a group house where he was expected to help with chores like dishes, but his "main priority was to try to really focus on [his] job, and so [he] neglected a lot of the house responsibilities." AR at 363. He was "really agitated," his hygiene suffered, and his laundry piled up to the point that his housemates started doing it for him. AR at 363. "[T]here was a discussion at a group level with some of the other housemates," and the owner of the house eventually "gave [E.B.] an ultimatum" either to quit the job or to move out of the house. AR at 362.

E.B.'s attorney requested that E.B.'s work in that role "be looked at under a trial work period considering it was under six months and also the difficulty that he had while being able to sustain that work." AR at 352. The ALJ noted that this work could not be considered a trial work period if it began less than twelve months after E.B.'s alleged onset date, and held open the record

to allow E.B. to amend his alleged onset date or offer additional argument on that point. AR at 353, 384. E.B. subsequently amended his alleged onset date to August 1, 2021. *See* AR at 35.

E.B. started an educational program towards becoming a physical therapy assistant in July of 2023 at Carrington College. AR at 356–57. At the time of the December 6, 2023 administrative hearing, E.B. was taking two classes. AR at 356–57. That program was part-time to start with an expectation of becoming full-time later. AR at 357. E.B. had passed the classes that he completed thus far but found them difficult and did not feel that he did well in them. AR at 357–58. He received accommodations to allow him to record lectures and take an additional fifty percent of time for tests and quizzes. AR at 358. He struggled with keeping track of his schedule. AR at 366–67. E.B. had difficulty concentrating in class and getting along with people, and he sometimes felt like he "can't go to school because . . . everyone's . . . going to look down at [him] and so forth." AR at 371–72.[4]

As of the date of the hearing, E.B. was living in supportive housing, but required additional help from his mother to manage his finances and order pre-made meals for him. AR at 367–68. His mother holds power of attorney for him and serves as his case manager. *Id.* When E.B. falls behind on household chores because he is overwhelmed with his classes, his mother visits him and helps him out of his "ADHD paralysis." AR at 370–71. He now uses a laundry service, but he still relies on his mother to come over and help him sort and prioritize laundry for the service to pick up. AR at 368. E.B.'s mother also helps him manage doctor's appointments and she uses a smartphone application to track his location and remind him when his phone battery needs charging. AR at 369. E.B.'s mother schedules taxis to take him to his classes. AR at 370.

E.B. sometimes goes four or five days without showering and struggles to keep up with other hygiene like brushing his teeth. AR at 371. He has difficulty sleeping and often feels fatigued. AR at 373–74.

[4] Soon after the administrative hearing, E.B. was apparently removed from his academic program after failing a kinesiology class. *See* AR at 67–72 (February 17, 2024 letter from E.B. to an academic dean appealing his removal). Though that occurred before the ALJ's March 13, 2024 decision, it does not appear to have been presented to the ALJ prior to that decision. *See* AR at 66 (fax cover sheet to the Appeals Council dated February 25, 2025).

E.B. testified that he used drugs and alcohol in the past but had been clean and sober for two years as of the date of the hearing. AR at 374.

Vocational expert Alan Cummings (the VE) testified that E.B.'s work for his family's insurance company would be categorized as light unskilled work as an "office helper." AR at 375. The ALJ asked if someone of E.B.'s age, education, and work experience who was limited to "detailed but not complex tasks" and only "occasional interaction with the public and . . . occasional changes in the work routine" would be able to perform that work. AR at 375. The VE testified that such a person could perform E.B.'s past work. AR at 375. The ALJ asked if there was other work that such a person could perform, and the VE identified "marker," "cleaner," and "routing clerk" as suitable roles, each with more than one hundred thousand jobs in the national economy. AR at 376. In response to further questioning by the ALJ, the VE testified that an additional limitation of ten percent time off task would not change the available jobs, but fifteen to twenty percent time off task would preclude any full-time work, as would being absent from work twice per month. AR at 376–77.

E.B.'s counsel questioned the VE about distinctions between "detailed" and "complex" tasks and the sources of his knowledge regarding job numbers, job requirements, and employer tolerances. AR at 377–83.

**C. Five-Step Framework for Disability Determinations**

The Social Security Administration uses a five-step process to determine whether claimants are disabled, and thus entitled to disability benefits:

> Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "*not disabled*" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).
>
> Step 2. Is the claimant's impairment severe? If not, then the claimant is "*not disabled*" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).
>
> Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is

> "*disabled*" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).
>
> Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "*not disabled*" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).
>
> Step 5. Is the claimant able to do any other work? If not, then the claimant is "*disabled*" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "*not disabled*" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "*disabled*" and therefore entitled to disability benefits. *See id.*

*Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999) (footnote omitted); *see also Maxwell v. Saul*, 971 F.3d 1128, 1130 n.2 (2020).[5]

For Step 3 of the analysis, nearly all listed impairments related to mental health or functioning incorporate a test of whether a claimant has either "extreme" limitations in one category, or "marked" limitations in two categories, with respect to a claimant's abilities to: (1) "Understand, remember, or apply information"; (2) "Interact with others"; (3) "Concentrate, persist, or maintain pace"; and (4) "Adapt or manage oneself." These standards are often referenced as the "Paragraph B criteria." *See* Listing 12.00(A)(2). For some listings, that standard can be substituted by a claimant showing that they meet separate "Paragraph C criteria" or other listing-specific standards. *Id.* The Paragraph C criteria for the impairments at issue require a claimant to show "medically documented history of the existence of the disorder over a period of

---

[5] The regulatory citations in this passage apply to adjudication of Disability Insurance benefits and refer to an earlier version of 20 C.F.R. § 404.1520 that is substantially similar to the current language of that regulation. 20 C.F.R. § 416.920 sets forth materially identical steps to assess disability for the purpose of Supplemental Security Income benefits.

at least 2 years"; ongoing treatment, therapy, support, or a highly structured setting that diminishes the claimant's symptoms; and "minimal capacity to adapt to changes in [the claimant's] environment or to demands that are not already part of [her] daily life." *See* Listing 12.00(A)(2)(c); Listing 12.04(C).

Before evaluating Steps 4 and 5, the ALJ assesses a claimant's residual functional capacity (RFC), which is "what the individual can still do despite her limitations." *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). "At steps one through four, the claimant retains the burden of proof; at step five, the burden shifts to the Commissioner." *Maxwell*, 971 F.3d at 1130 n.2.

**D. The ALJ's Decision**

The ALJ determined at Step 1 that E.B. had engaged in substantial gainful activity during his work for In-N-Out from September 25, 2022 through "his last regular work hours during the pay period ending April 2, 2023." AR at 38. The ALJ held that such work "does not qualify as an unsuccessful work attempt because it lasted over 6 months," and because it "did not end because of his impairments." AR at 38. The ALJ noted that E.B. was not fired but instead left that job "because the owner of his supportive living program gave him an ultimatum because he was not keeping up with all of the responsibilities of that program." AR at 38. The ALJ acknowledged that there was a period of more that twelve months between E.B.'s amended alleged onset date and the start of his work at In-N-Out, and thus that E.B.'s work there might qualify as a trial work period, but found it unnecessary to resolve that issue because the ALJ ultimately found E.B. not disabled for other reasons. AR at 38.

At Step 2, the ALJ identified the following severe impairments: "anxiety, depression, attention deficit hyperactivity disorder (ADHD), specific learning disorder, autism spectrum disorder, adjustment disorder, and opioid use disorder in remission." AR at 38. The ALJ found that E.B.'s alleged disabilities of traumatic brain injury and post-traumatic headaches were not severe. AR at 39.

At Step 3, the ALJ concluded that E.B.'s impairments did not meet or medically equal a listed impairment. AR at 39–40. The ALJ considered Listings 12.04, 12.06, 12.10, and 12.11.

AR at 39. All of those listings include the standard Paragraph B criteria for mental impairments. The ALJ determined that that E.B. was only mildly limited in understanding, remembering, or applying information. *Id.* The ALJ assessed moderate limitations in E.B.'s ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself. AR at 39–40. The ALJ relied on E.B.'s six months of work at In-N-Out, his passing grades in physical therapy assistant classes, relatively normal mental status examinations, and certain of his activities of daily living. *Id.* Because E.B. did not have at least two marked impairments or at least one extreme impairment, the ALJ found that he did not meet the Paragraph B criteria for any of the impairments at issue. The ALJ also concluded that he did not satisfy the alternative Paragraph C criteria "because he does not have marginal adjustment, that is, minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." AR at 40.

The ALJ assessed E.B.'s RFC as the "capacity to perform a full range of work at all exertional levels" except that he "can perform detailed but not complex tasks, can have [only] occasional interaction with the public and can handle [only] occasional changes in work routine." AR at 40. In doing so, the ALJ found that E.B.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but E.B.'s "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout this decision." AR at 42. The ALJ recited portions of E.B.'s testimony and other medical and non-medical evidence in the record, but did not identify any specific testimony by E.B. that the ALJ found not to be credible. AR at 40–47.

Based on that RFC and the VE's testimony at the administrative hearing, the ALJ determined at Step 4 that E.B. could perform his past work as office helper. AR at 47. Though that work was part time and for his family's business, the ALJ noted that his earnings exceeded the presumptive threshold for substantial gainful activity, and determined that "the evidence does not persuasively establish that he did not perform any substantial work tasks or that it was subsidized so significantly that it was not worth even the minimum presumptive substantial gainful activity earnings level." AR at 47–48. As an alternative basis for her conclusion, the ALJ

United States District Court
Northern District of California

found that E.B. could perform other work as a marker, cleaner, or routing clerk, and thus also would not qualify for disability at Step 5. AR at 49. The ALJ therefore concluded that E.B. was not disabled. *Id.*

The Appeals Council denied E.B.'s request for review on February 27, 2025. *See* AR at 1. On May 27, 2025, the Appeals Council set aside that earlier denial so that it could consider additional evidence, but having done so, the Appeals Council denied the request again because it found no reason to reconsider the ALJ's decision. *Id.* The ALJ's decision therefore serves as the Commissioner's final decision denying E.B.'s application. *Id.*

**E. The Parties' Arguments**

E.B. argues that the ALJ erred in her evaluation of his work at In-N-Out and should have considered that an unsuccessful work attempt because the record does not show that he worked for more than six months, ECF No. 9 at 16–17, and because the work ended due to his impairments or the removal of special conditions related to his impairments, *id.* at 17–18. E.B. asserts that the ALJ's error in evaluating that work was prejudicial because the ALJ went on to treat that work as a basis for discrediting E.B.'s testimony and other evidence of disability. *Id.* at 18.

E.B. also contends that the ALJ erred in evaluating E.B.'s own statements, *id.* at 18–25, and those of his mother, supportive housing supervisor, and job coach, *id.* at 25–26. One of several arguments he presents regarding his own testimony is that the ALJ not only failed to provide sufficiently convincing reasons to discredit him, "but she also erred by failing to specify *which* of his symptoms were not credible before disregarding those statements." *Id.* at 19. E.B. asserts further errors in the ALJ's assessment of the Paragraph C criteria for the mental impairment listings she considered, *id.* at 26–28, and in her evaluation of certain opinions offered by his treating therapist, *id.* at 28–29.

The Commissioner argues that the ALJ appropriately assessed E.B.'s RFC and that her conclusions were supported by substantial evidence. ECF No. 11 at 2–6. The Commissioner addressed the ALJ's treatment of E.B.'s statements in that context, arguing that the ALJ identified sufficient reasons why the record as a whole was inconsistent with disability and "does not have to 'perform a line-by-line exegesis' of the claimant's testimony." *Id.* at 4 (quoting *Lambert v. Saul*,

980 F.3d 1266, 1277 (9th Cir. 2020)).

The Commissioner contends that E.B.'s work at In-N-Out was not an unsuccessful work attempt because it lasted for more than six months—eight days more, from September 25, 2022 to April 2, 2023. *Id.* at 6.

The Commissioner argues that the ALJ was not required to provide specific reasons to discount statements from non-medical witnesses other than E.B. because older Ninth Circuit authority to that effect has been abrogated by regulatory changes. *Id.* at 7–10. Even if such requirements remained in effect, the Commissioner asserts briefly that the ALJ's reasoning would have met the "germane" standard for declining to credit those statements. *Id.* at 10. The Commissioner contends that the ALJ properly evaluated the Paragraph C criteria by considering E.B.'s work, classes, and other activities throughout her opinion, and determining on that basis that E.B. had more than minimal capacity to adapt to changes and new demands. *Id.* at 10–11.

E.B.'s reply generally reiterates the arguments in his opening brief, and argues that the Commissioner failed to address some of them. ECF No. 12.

## III. LEGAL STANDARD

In cases challenging the denial of disability benefits, district courts have authority to review and "affirm[], modify[], or revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence," which "'means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). A court must consider evidence both supporting and detracting from the Commissioner's decision; if the evidence could reasonably support either outcome, the court may not substitute its judgment for that of the ALJ. *Id.* at 1010. Courts "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Id.*

United States District Court
Northern District of California

## IV. ANALYSIS

### A. E.B.'s Work at In-N-Out

The parties dispute whether E.B.'s work at In-N-Out should be characterized as an unsuccessful work attempt rather than substantial gainful activity. "Work that qualifies as an unsuccessful work attempt is not substantial activity." *Richardson v. Dudek*, No. 24-cv-03734-BLF, 2025 WL 860507, at *4 (N.D. Cal. Mar. 19, 2025) (citing 20 C.F.R. § 404.1574(c)). Nor is it "evidence of the ability to engage in substantial gainful activity." *L.M. v. SSA Comm'r*, No. 25-cv-08617-LB, 2026 WL 2719483, at *6 (N.D. Cal. Sept. 15, 2026).

Another district court has summarized the test for an unsuccessful work attempt and the significance of such attempts as follows:

> At step one, an ALJ must determine if a claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, regardless of their medical condition, age, or work experience. 20 C.F.R. § 404.1520(b). However, when a claimant attempts to work but is forced to stop due to their impairment, this is considered an unsuccessful work attempt and will not show that the claimant is able to do SGA. 20 C.F.R. §§ 404.1574(a)(1), 416.974(a)(1). An unsuccessful work attempt is a period of six months or less of work that comes after "a significant break in the continuity of . . . work." 20 C.F.R. §§ 404.1574(c), 416.974(c). "Prior work [is] 'discontinued' for a significant period if [the claimant was] out of work at least 30 consecutive days," or when the claimant was "forced to change to another type of work or another employer" due to their impairment. 20 C.F.R. §§ 404.1574(c)(2), 416.974(c)(2). The work must end or be reduced to below SGA levels either due to the claimant's impairment or "because of the removal of special conditions that took into account [their] impairment and permitted [them] to work." 20 C.F.R. §§ 404.1574(c)(3), 416.974(c)(3). An ALJ may not use an unsuccessful work attempt to discredit a claimant's subjective symptom testimony. Rather, an unsuccessful work attempt may bolster a claimant's allegations of disabling pain. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1039 (9th Cir. 2007).

*Nathan L. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-cv-00786-MC, 2023 WL 3946622, at *2 (D. Or. June 12, 2023) (alterations in original).

There is no dispute that E.B. was out of work for at least thirty days before beginning his job at In-N-Out, but the parties dispute whether the ALJ properly assessed both of the other elements: work for a period of less than six months, and cessation or reduction of work due to impairments.

United States District Court
Northern District of California

**1. Duration of Work**

E.B. was hired to work at In-N-Out on September 25, 2022. AR at 620. As discussed at the hearing, E.B. left that job approximately six months later after group house manager told him that he needed to choose between the job and his housing because he was not keeping up with basic chores. The record does not make clear precisely when E.B. stopped working.

The record includes the following pay statements for E.B.'s work at In-N-Out:

| Period Start | Period End | Hours | Pay | Citation |
|---|---|---|---|---|
| Sept. 19, 2022 | Oct. 2, 2022 | 8.97 | $170.43 | AR at 623 |
| Oct. 3, 2022 | Oct. 16, 2022 | 57.65 | $1,095.35 | AR at 624 |
| Oct. 17, 2022 | Oct. 30, 2022 | 64.16 | $1,243.16 | AR at 625 |
| Oct. 31, 2022 | Nov. 13, 2022 | 66.83 | $1,303.19 | AR at 626 |
| Nov. 14, 2022 | Nov. 27, 2022 | 68.48 | $1,451.44 | AR at 627 |
| Nov. 28, 2022 | Dec. 11, 2022 | 65.35 | $1,290.66 | AR at 628 |
| Dec. 12, 2022 | Dec. 25, 2022 | 65.73 | $1,432.88 | AR at 629 |
| Dec. 26, 2022 | Jan. 8, 2023 | 57.31 | $1,246.28 | AR at 630 |
| Jan. 9, 2023 | Jan. 22, 2023 | 58.76 | $1,277.72 | AR at 631 |
| Jan. 23, 2023 | Feb. 5, 2023 | 69.93 | $1,278.52 | AR at 632 |
| Feb. 6, 2023 | Feb. 19, 2023 | 43.34 | $1,045.90 | AR at 633 |
| Feb. 20, 2023 | Mar. 5, 2023 | 57.5 | $1,250.63 | AR at 634 |
| Mar. 6, 2023 | Mar. 19, 2023 | 46.13 | $1,003.33 | AR at 635 |
| Mar. 20, 2023 | Apr. 2, 2023 | 24.00 | $534.00 | AR at 636 |

A pay statement for the period from April 3 to April 16, 2026 appears to reflect payment of $364.68 for sick leave and holiday pay. AR at 367.[6] A final pay statement for the period from June 12 to June 15, 2023 reflected a $323.74 payout of E.B.'s unused vacation time. AR at 638.

[6] Some pay statements during E.B.'s employment also include "hours" that may not reflect actual work performed, such as for bonuses and leave. The hours in the chart above thus likely overstate the amount of time that E.B. spent working, at least to some degree. Such distinctions during the time when E.B. was undisputably employed at In-N-Out are not relevant to issues in dispute.

Neither party suggests those statements reflect work actually performed or that they are relevant to the duration of E.B.'s work for the purpose of assessing substantial gainful activity.

The Court presumes for the sake of argument that the relevant starting date for E.B.'s work is his September 25, 2026 date of hiring, AR at 620, without reaching E.B.'s argument that he might not have started work immediately, *see* ECF No. 12 at 2–3. A period of six months from that date runs through March 24, 2026. *See Stevens v. Jiffy Lube Int'l, Inc.*, 911 F.3d 1249, 1252 (9th Cir. 2018) (explaining that "a month beginning on the fifteenth concludes on the fourteenth of the following month"). To exceed the six-month limit for an unsuccessful work attempt, E.B. therefore would have needed to work beyond March 24, 2026.

E.B.'s final pay statement reflecting actual work indicates that he worked twenty-four hours for the period from March 20, 2023 through April 2, 2023. AR at 636. It is not clear from that document when E.B. ceased work, or whether that occurred after March 24. *See id.* Neither the Commissioner's brief nor the ALJ's decision cites any other evidence in the record establishing when E.B. left his job at In-N-Out. *See* ECF No. 11 at 6; AR at 38. "The ALJ always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered even when the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177 (9th Cir. 2003). In the face of this ambiguous record, the ALJ erred in presuming that this work "lasted *over* 6 months" when that is not clear from E.B.'s pay statements, and when the ALJ acknowledged in the same paragraph that E.B. only testified that "his job at In-N-Burgers lasted 6 months." AR at 38 (emphasis added); *see also* AR at 354 (E.B.'s testimony that "it was just six months of working").

**2. Reason for Departure**

The ALJ also determined that E.B.'s work at In-N-Out "did not end because of his impairments." AR at 38. The ALJ reached that conclusion because he "did not get fired" or quit at the recommendation of a doctor, but instead left "because the owner of his supported living program gave him an ultimatum" based on his failure to keep up with chores and other responsibilities. *Id.*

The Commissioner does not defend this portion of the ALJ's reasoning. *See* ECF No. 11

at 6 (asserting that the In-N-Out job was not an unsuccessful work attempt only based on its duration). The Court is aware of no authority suggesting that a claimant must be fired or leave a job based on medical advice to establish that an impairment caused the end of a work attempt. To the contrary, courts and ALJs frequently recognize that this element is met when claimants leave jobs of their own accord because their work has become untenable due to their impairments. *See, e.g.*, *McNeely v. Comm'r of Soc. Sec.*, No. 2:17-cv-00335-KJM-KJN, 2019 WL 325270, at *2 (E.D. Cal. Jan. 25, 2019) (finding an unsuccessful work attempt where the plaintiff "quit because of his impairments"); *Jamie M. v. Kijakazi*, No. 1:20-cv-03118-FVS, 2021 WL 9748487, at *4 (E.D. Wash. Sept. 14, 2021) (finding an unsuccessful work attempt where "Plaintiff alleged that he stopped working due to his impairments"); *Phillip M. v. Kijakazi*, No. 2:20-cv-00381-MKD, 2022 WL 1916615, at *9 (E.D. Wash. June 3, 2022) (noting an ALJ's finding of an unsuccessful work attempt where the plaintiff "stopped working" because he "just couldn't do it" due to communication problems); *Bonnie B. v. Saul*, No. 3:20-cv-00653-RBM, 2020 WL 7695332, at *2 (S.D. Cal. Dec. 28, 2020) (noting an ALJ's finding of an unsuccessful work attempt where the plaintiff "testified that she could not maintain her level of performance due to her impairments, so she stopped working").

Here, E.B. testified that he struggled with the responsibilities of his job at In-N-Out and was unable to work independently. AR at 354–56, 363–65. His job made him "really agitated" and "exhausted," such that he "neglected a lot of the house responsibilities." AR at 363. E.B. testified that in the period leading up to being forced to choose between his job and his housing:

> They [his housemates] could tell that, you know, I was exhausted from the job, and there was a lot of things that I wasn't taking care of, like such as my hygiene, and my laundry, you know, would pile up in a corner, and someone, you know, certain housemates would have -- would actually do my laundry for me and help me out with that.

AR at 363. It was in that context that the owner of the house told him that he would need to quit his job if he wanted to continue living there. AR at 362, *see* AR at 797 (statement by the house owner that "the job was compromising [E.B.'s] health and overall well being").

It is clear from the record that E.B.'s exhaustion, agitation, and failure to keep up with basic daily activities like hygiene and laundry while working a part-time job resulted from his

impairments. Those effects ultimately put him in a position where he was required to choose between the job and his housing, and he determined that continuing to work was untenable. That does not differ meaningfully from a claimant who quits based on a perceived inability to keep up with the demands of a job, *see, e.g.*, *Bonnie B.*, 2020 WL 7695332, at *2, *Phillip M.*, 2022 WL 1916615, at *9; or based on some other effect of an impairment, *e.g.*, *McNeely*, 2019 WL 325270, at *2. The ALJ therefore erred in concluding that the house owner's ultimatum meant that E.B. did not leave his job at In-N-Out due to his impairments.

**3. Prejudice**

The ALJ's errors in evaluating whether E.B.'s work at In-N-Out was an unsuccessful work attempt prejudiced the remainder of the ALJ's analysis even though the ALJ proceeded from there to consider the remainder of the five-step test, because the ALJ repeatedly relied on E.B. having "engaged in substantial gainful activity from September 2022 to April 2023" as evidence that his impairments did not meet a listing, AR at 39–40, as supporting an RFC with only minimal limitations, AR at 44, as a reason to discredit medical opinion evidence, AR at 45, 46, and as grounds to reject statements by E.B. (though the ALJ did not specify which statements), AR at 46.

As noted above, "an unsuccessful work attempt is not substantial [gainful] activity," *Richardson*, 2025 WL 860507, at *4, nor even "evidence of the ability to engage in substantial gainful activity," *L.M.*, 2026 WL 2719483, at *6. District courts have therefore held that where "the ALJ relied on Plaintiff's attempts to work as a reason to reject his symptom statements . . . , this error is not harmless." *Jamie M.*, 2021 WL 9748487, at *4 (E.D. Wash. Sept. 14, 2021). As one court put it:

> The ALJ concluded that Plaintiff's unsuccessful work attempt tends to show her ability to maintain at least some kind of employment. But this finding contradicts both regulation and caselaw. Rather, an attempt to return to substantial gainful activity, such as Plaintiff's four-month stint here, rendered unsuccessful solely by Plaintiff's symptoms and limitations, strengthens Plaintiff's credibility.

*Bonnie B. v. Saul*, No. 3:20-cv-00653-RBM, 2020 WL 7695332, at *10 (S.D. Cal. Dec. 28, 2020) (citations omitted) (citing *Lingenfelter*, 504 F.3d at 1038).

In *Lingenfelter*, the Ninth Circuit noted that trial work periods of less than nine months are

not considered evidence of non-disability under Social Security Administration regulations.[7] 504 F.3d at 1039 (citing 20 C.F.R. § 404.1592; *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002)). That case held that "if working for almost nine months is not evidence that a disability benefit recipient is no longer disabled, then a nine week unsuccessful work attempt is surely not a clear and convincing reason for finding that a claimant is not credible regarding the severity of his impairments." *Id.*

Accordingly, the ALJ's error in determining that E.B.'s work at In-N-Out did not qualify as an unsuccessful work attempt is not harmless, because if the stint at In-N-Out did qualify as such, that would undermine the ALJ's reliance on E.B.'s restaurant work as evidence of "substantial gainful activity" at various other steps of her analysis. The ALJ's error is a defect that reappears at other key points in her reasoning. Remand is necessary for the Commissioner to reassess whether that employment lasted for more than six months and whether it ended due to E.B.'s impairments.

**B. E.B.'s Statements and Testimony**

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant meets this requirement and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* To satisfy the "clear and convincing reasons" requirement, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*,

[7] The ALJ therefore may have also erred here in declining to resolve whether E.B.'s work could qualify as a trial work period, *see* AR at 38, though the parties have not addressed that issue specifically. The Commissioner is encouraged to consider that question on remand.

806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).[8]

The ALJ here assessed E.B.'s credibility as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained throughout this decision.

AR at 42.

The Ninth Circuit has repeatedly held that this sort of "'boilerplate statement' by way of 'introductory remark,' which is 'routinely include[d]' in ALJ decisions denying benefits," is insufficient when an ALJ fails to go on to "'identify what parts of the claimant's testimony were not credible and why.'" *Lambert*, 980 F.3d at 1277 (quoting *Treichler*, 775 F.3d at 1103) (alteration in original).

The ALJ returned to the issue of E.B.'s statements in two paragraphs towards the end of her RFC analysis, asserting that E.B.'s "own statements about his symptoms and impairments are not fully consistent with the record as a whole," and that his "allegations of disabling symptoms and impairments are also not fully consistent with the treatment records." AR at 46-47. In those paragraphs, the ALJ recited other evidence as purportedly showing relatively mild impairments, but still did not identify any particular statements by E.B. that she found not credible.

The Commissioner quotes the Ninth Circuit's decision in *Lambert* as holding that an ALJ need not "'perform a line-by-line exegesis' of the claimant's testimony." ECF No. 11 at 4 (quoting *Lambert*, 980 F.3d at 1277). That quotation is accurate but lacks context. *Lambert* held that even though an ALJ need not parse testimony "line-by-line," the Ninth Circuit's "precedents plainly required the ALJ to do more than was done here, which consisted of offering non-specific conclusions that [the claimant's] testimony was inconsistent with her medical treatment." 980 F.3d at 1277. Like here, that "ALJ did provide a relatively detailed overview of [the claimant's] medical history," but "'providing a summary of medical evidence . . . is not the same as providing

[8] The Commissioner's brief fails to address this controlling legal standard. *See* ECF No. 11.

clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" *Id.* at 1278 (quoting *Brown-Hunter*, 806 F.3d at 494) (ellipsis in original). A court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a claimant's symptom] testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony." *Id.* at 1277 (quoting *Brown-Hunter*, 806 F.3d at 494).

The same is true here. The Court cannot evaluate whether the ALJ provided sufficiently convincing reasons to discredit E.B.'s testimony when the ALJ did not say which testimony she declined to credit. At least some of E.B.'s testimony, if credited, would seem to support more severe restrictions than assessed by the ALJ. *See, e.g.*, AR at 359 (asserting difficulty remembering "the months in . . . chronological order"); AR at 368 (testifying that despite living in supportive housing and utilizing a laundry service, E.B. needs his mother's help to select laundry for the service to pick up). The ALJ failed to offer clear, convincing, and specific reasons to reject such testimony.

Conversely, the Court also cannot resolve Plaintiff's more specific arguments against certain of the ALJ's stated reasons for doing so, including reasons related to E.B.'s activities, ECF No. 9 at 19–20, his educational history, *id.* at 21–22; purportedly conservative treatment, *id.* at 22–23; reports of improvement, *id.* at 23–24, and mental status examinations, *id.* at 24–25. Depending on the testimony at issue, those reasons might be sufficient for an ALJ to reject some contradictory statements by a claimant, even though they would not be sufficient to reject other statements that do not conflict. But when the ALJ did not identify any statements she found not credible, the Court is left to guess which of E.B.'s statements might be undermined by the ALJ's lengthy summary of the administrative record. *See* ECF No. 40–47. The Court "may not affirm the ALJ on a ground upon which [s]he did not rely," *Garrison*, 759 F.3d at 1009, nor can the Court disregard clear Ninth Circuit precedent requiring ALJ's to identify particular testimony they find not credible, *see Lambert*, 980 F.3d at 1277; *Brown-Hunter*, 806 F.3d at 493.

The ALJ's failure to identify statements by E.B. that she found not credible is therefore another error requiring reversal and remand.

Though not addressed by the parties and not necessary to the Court's holding, it is perhaps notable in this context of E.B.'s credibility that a case manager, Lisa Noriega, assessed E.B. in October[9] 2021 as "tend[ing] to minimize his errors and/or issues unless directly confronted by them." AR at 1032. The ALJ cited Noriega's report for other observations that tended to support the ALJ's conclusion of non-disability, like E.B.'s ability to address himself and the fact that he enjoyed socializing. AR at 40 (citing Ex. 6F/28–30, AR at 1028–33). But the ALJ did not mention Noriega's note that E.B. underreported his limitations. AR at 1032. Despite that assessment, the ALJ concluded without sufficient analysis that E.B. overstated his limitations, apparently without considering whether he might have understated them in some of the reports on which the ALJ relied as indicating high levels of functioning.

**C. Other Asserted Errors**

E.B. also asserts other errors by the ALJ in evaluating statements from E.B.'s mother, job coach, and housing provider, ECF No. 9 at 25–26, in addressing the Paragraph C criteria at Step 3, *id.* at 26–28, and in assessing opinions of E.B.'s treating therapist, *id.* at 28–29. E.B. seeks only remand for further administrative proceedings, not a judicial award of benefits. *See id.* at 29; ECF No. 12 at 9. Accordingly, resolution of those other potential errors would not alter the outcome of this case based on the errors the Court has identified above: that the Commissioner's denial of E.B.'s application for must be reversed and remanded for further proceedings. The Court therefore declines to reach these remaining issues and instructs the Commissioner to consider all of E.B.'s arguments on remand.

/ / /

/ / /

/ / /

/ / /

/ / /

[9] Noriega's signature on this annual review report is dated "1/20/21," but all other dates in the report indicate that the review occurred in October. *See* AR at 1033. Noriega's signature date therefore appears to be a typographical error.

## V. CONCLUSION

For the reasons discussed above, the Commissioner's decision finding E.B. not disabled is REVERSED and REMANDED for further administrative proceedings consistent with this Order. The Clerk shall enter judgment in favor of E.B. and close the case.

**IT IS SO ORDERED.**

Dated: September 28, 2026

LISA J. CISNEROS
United States Magistrate Judge